## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

STEVIE L. BLACK,

     Petitioner,

     v.

WARDEN, PICKAWAY
CORRECTIONAL INSTITUTION,

     Respondent.

**Case No. 2:22-cv-3087**
**Judge Sarah D. Morrison**
**Magistrate Judge Elizabeth P. Deavers**

### REPORT AND RECOMMENDATION

Petitioner, a state prisoner proceeding *pro se*, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter has been referred to the Undersigned pursuant to 28 U.S.C. § 636(b) and this Court's General Order 22–05.  Pending before the Court are the Petition (ECF No. 1); Respondent's Return of Writ (ECF No. 11); Petitioner's Reply (ECF No. 19); and the state court record (ECF No. 10), and supplemental record (ECF No. 22-1).[1]  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the Petition be **DENIED** and that this action be **DISMISSED**.

The Undersigned further **RECOMMENDS** that the Court decline to issue a Certificate of Appealability ("COA").

---

[1] On February 17, 2023, Petitioner filed a Motion to Expand the Record (ECF No. 17), requesting for additional evidence to be added to the record.  (*Id.* at PageID ## 850–52.)  Respondent opposed the Motion, noting that "none of [Petitioner's] proposed evidence was offered to the state courts," and that this Court is precluded from considering such evidence.  (ECF No. 18, PageID # 888.)  On August 24, 2023, the Undersigned granted in part and denied in part Petitioner's Motion, ordering Respondent to supplement the state court record with "the March 6, 2019 'Identification of Discovery Provided' (Doc. 17-1, PageID 870-873); and the Exhibit A to Petitioner's February 8, 2022 Motion to Vacate."  (ECF No. 20, PageID # 915.)  Respondent filed the supplemental exhibits on October 10, 2023.  (ECF No. 22-1.)

## I.    Procedural History

The record reveals the following relevant procedural history, as summarized by the Ohio Court of Appeals, Tenth Appellate District. *See State v. Black*, 2021-Ohio-676, 2021 WL 870420 (Ohio 10th Dist. Mar. 9, 2021). The state appellate court summarized the facts as follows:

> {¶ 2} By indictment filed February 6, 2019, plaintiff-appellee, State of Ohio, charged appellant with one count of kidnapping in violation of R.C. 2905.01, a first-degree felony; one count of rape in violation of R.C. 2907.02, a first-degree felony; one count of robbery in violation of R.C. 2911.02, a second-degree felony; and one count of robbery in violation of R.C. 2911.02, a third-degree felony.

> {¶ 3} Appellant pleaded not guilty and requested a jury trial, at which the following evidence was presented.

> {¶ 4} A.S. lived with her boyfriend, A.R., and their children in a trailer park on the south side of Columbus. Because A.S. did not have WiFi in the trailer, she frequently utilized the open WiFi connection at the nearby Sandpebble Lounge ("Sandpebble"). To reach Sandpebble from her trailer, she had to walk through an open field. The open field led to a path that provided access to the back of Sandpebble. The path was bordered by thick, tall brush.

> {¶ 5} Mid-morning on September 25, 2018, A.S. walked alone through the open field to use the WiFi at Sandpebble. As she stood near the path leading to Sandpebble, an older African American man with a gray beard and mustache approached her; she had never seen the man before. The man, later identified as appellant, was taller than A.S. and weighed "almost 100 pounds" more than her. (July 30, 2019 Tr. at 173.) Appellant told A.S. to "come here." *Id.* at 174. Although she was frightened, A.S. complied with appellant's directive. As she neared appellant, she smelled alcohol on him. Appellant pushed A.S. down and she struck the back of her head on the ground. As she lay on her back, appellant pulled down her leggings (she was not wearing underwear), pulled down his pants, climbed on top of her, and inserted his penis into her vagina. Appellant told A.S. that it had been "a long time since he had a woman." *Id.* at 182. A.S. was crying and praying during the entire ordeal. Because appellant was so much larger than A.S., she could not physically fight him off. She did not cry out for help because she was terrified. After the rape, A.S. pulled up her leggings; they were wet with appellant's semen. She ran back to her trailer and put the leggings in a plastic bag.

> {¶ 6} Approximately one hour later, A.S. returned to Sandpebble. She again encountered appellant; this time, he stole her purse, which contained a cell phone,

a necklace, and some cash. She could not report the rape or robbery to the police because appellant had stolen her cell phone.

{¶ 7} A.S. did not tell A.R. about the rape when he returned home from work that evening because she was scared to death and did not know whether he would believe her. A.S. engaged in consensual sex with A.R. that evening.

{¶ 8} The next day, A.S. and A.R. went to a nearby grocery store. As they were leaving, appellant stopped them. A.S. was scared when she saw appellant. Appellant spoked [sic] to A.R., and then offered A.S. his jacket. A.S. assumed appellant did so because it was raining and cold. A.S. took the jacket and then walked home with A.R. She put the jacket in a plastic bag separate from the one containing her leggings. Later that evening, A.S. told A.R. that appellant had raped her the previous day. At A.R.'s urging, A.S. called the police using a borrowed cellphone.

{¶ 9} Columbus Police Officer William Wilson interviewed A.S. at approximately midnight on September 26, 2018. According to Wilson, A.S. was "clearly upset" as she recounted what had happened to her. *Id.* at 223. A.S. also reported that her assailant had taken what Wilson described as a "backpack-like item" from her. *Id.* at 228. A.S. gave Wilson her leggings, which had semen in the crotch area; she also gave Wilson the jacket appellant had given her. Wilson also secured the items in his police cruiser and contacted the sexual assault bureau.

{¶ 10} Columbus Police Sexual Assault Detective Joel Vogel interviewed A.S. at approximately 1:00 am on September 27, 2018. According to Vogel, A.S. was "very scared [and] timid" and looked down at the floor as she spoke. It was "[v]ery obvious" to Vogel that "something was upsetting her." *Id.* at 242. A.S. reported that she had been sexually assaulted around noon on September 25, 2018 in a grassy field between the trailer park and Sandpebble and that her assailant had stolen her purse at the time of the assault. She provided a description of her assailant but could not identify him by name.

{¶ 11} Vogel encouraged A.S. to go to the hospital for a sexual assault examination and offered to call an ambulance or have a police officer transport her. She declined the offer, telling Vogel that she was "too scared" and would have A.R. take her later that day. *Id.* at 254. Vogel collected oral DNA standards from A.S. and A.R. and submitted them, along with the leggings and jacket, to the crime lab for testing. Vogel later learned that A.S. did not go to the hospital for a sexual assault examination.

{¶ 12} Vogel again interviewed A.S. in November 2018. During that interview, A.S. reported that she had learned her assailant went by the street name "C Black." *Id.* at 258. She told Vogel she recently had seen appellant in the area but did not call the police because he was always with a group of people and she was too scared to do so. Two days later, based upon an investigatory lead from the crime lab,

3

Vogel identified appellant as a suspect. Vogel created a photo array which included appellant's photograph. On November 21, 2018, A.S. was shown the photo array in accordance with established police procedures. She unequivocally identified appellant as her assailant.

{¶ 13} Appellant was arrested a few weeks later. Vogel obtained an oral DNA standard from appellant and submitted it to the crime lab for comparison to DNA recovered from the crotch area inside A.S.'s leggings. A crime lab forensic scientist confirmed that appellant's DNA was found in the crotch area inside A.S.'s leggings.

{¶ 14} Appellant did not call any witnesses, and the trial court denied his motion for judgment of acquittal pursuant to Crim.R. 29(A). The case was submitted to the jury and, following deliberations, the jury returned verdicts finding appellant guilty of rape and kidnapping, but not guilty of robbery. The trial court ordered a presentence investigation and subsequently sentenced appellant to eleven years of incarceration and notified him that he was being classified a Tier III sexual offender with a lifetime reporting and registration requirement, and a violent offender with a ten-year reporting and registration requirement. The trial court memorialized the conviction and sentence in a judgment entry filed August 29, 2019.

*Id.* at *1–2 (footnote omitted); (ECF No. 10, PageID ## 99–102.)

Petitioner appealed his conviction to the state appellate court and raised the following

three assignments of error:

[1] THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S R. 29 MOTION FOR ACQUITTAL.

[2] THE VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

[3] THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT ON A COUNT OF RAPE UNDER R.C. §2907.02 WITHOUT ADEQUATELY EXPLAINING THE DUTIES OF A SEX OFFENDER.

(ECF No. 10, PageID # 60.) On March 9, 2021, the state appellate court overruled Petitioner's

three assignments of error and affirmed the state trial court's decision. *Black*, 2021 WL 870420

at *9; (ECF No. 10, PageID ## 99–112.)

On May 21, 2021, Petitioner filed a Motion for Leave to File Delayed Appeal to the Ohio

Supreme Court (ECF No. 10, PageID ## 117–21), which the Court granted on June 1, 2021. (*Id.*

4

at PageID # 140.) Petitioner, proceeding *pro se*, then raised the following three issues in his memorandum in support of jurisdiction to the Ohio Supreme Court:

> Proposition of Law No. 1: Whether the trial court erred when it denied Appellant's R. 29 Motion for Acquittal.

> Proposition of Law No. 2: Whether the verdicts were against the manifest Weight of the evidence.

> Proposition of Law No. 3: Whether the trial court erred when it Sentenced the defendant on a count of rape under R.C. 2907.02 without adequately explaining the duties of a sex offender.

(*Id.* at PageID ## 141–47.) On August 17, 2021, the Ohio Supreme Court declined to accept jurisdiction. *State v. Black*, 172 N.E.3d 170 (Ohio 2021); (ECF No. 10, PageID # 149.)

On February 8, 2022, Petitioner, proceeding *pro se*, sought state post-conviction relief by filing a Petition to Vacate or Set Aside the Conviction in the state trial court and requested an evidentiary hearing. (ECF No. 10, PageID ## 150–80.) In his state post-conviction petition, Petitioner raised the following five grounds for relief:

> [1] This Ground stands upon the trial Courts Jurisdiction to [hold] an official Evidentiary Hearing Pursuant to the Ohio Revised Code – 2953.23(A)(1)(a), to which the Petitioner will show how he was Unavoidably Prevented from Discovering these Fact, do to Ineffective Assistance of Counsel, and the Petitioner's disability, and Incapacity to understand the laws of Ohio as a Offender.

> [2] The Petitioner was denied his Constitutional Sixth and Fourteenth Amendment rights to both effective assistance of Trial and Appellate Counsel, were the off record errors and issues where Cumulative in effect, prejudicing the Petitioner, and denying him the meaningful fair and just trial, and undermined the entire jury trial and appeal process in violation of the Fifth Amendment as well.

> [3] The trial Counsel's failures in this case is compounded by the Appellate Counsels failures to raise the Brady and Giglio issues in this case has violated the Petitioner's Constitutional rights of the 5th; 6th; and 14th Amendment rights to the United States, with the Ohio Constitutions Article I, sections 10 and 16.

> [4] There are [operative] facts that are both relevent and material in this case that has been omitted from the Trial Transcripts records that prevent not only a fair and just trial, but prevented a fair and just review of the error's and Constitutional issues

at trial and on the direct appeal. The Petitioner stands firm on his claim of being actually innocent, to which the unheard facts and evidence would prove it.

[5] The fact that the petitioner was never notified by trial counsel, appellate counsel, or the last jailhouse lawyer that I could have filed the Post-Conviction relief petition. I now through a second Jailhouse lawyer I bring this current Post-Conviction [relief] petition, were the petitioner is legally disabled and legally incapable of addressing these issues on his own.

(*Id.* at PageID ## 156, 161, 166, 170, 175.) On March 1, 2022, the state trial court denied relief without granting an evidentiary hearing. (*Id.* at PageID # 192.)

On April 21, 2022, Petitioner, proceeding *pro se*, appealed that denial to the state appellate court, raising the following three assignments of error:

**FIRST ASSIGNMENT OF ERROR:** THE TRIAL COURT ABUSED ITS DISCRETION WHEN DENYING APPELLANT'S MOTION TO VACATE OR SET ASIDE CONVICTION WITHOUT AN EVIDENTIARY HEARING.

**SECOND ASSIGNMENT OF ERROR:** APPELLANT WAS PREJUDICIALLY DENIED DUE PROCESS AND A FAIR TRIAL DUE TO THE INTENTIONAL WITHHOLDING OF BRADY MATERIAL EVIDENCE.

**THIRD ASSIGNMENT OF ERROR:** APPELLANT WAS DEPRIVED OF HIS SIXTH AMENDMENT GUARANTEES AS A RESULT OF TRIAL COUNSEL'S FAILURE TO INVESTIGATE AND DEFICIENT PERFORMANCE RENDERING THE JURY TRIAL FUNDAMENTALLY UNFAIR.

(*Id.* at PageID ## 196–222.) Concluding that Petitioner filed an untimely post-conviction petition to the state trial court, the state appellate court overruled all three assignments of error on September 6, 2022. (*Id.* at PageID ## 243–56.)

On October 20, 2022, Petitioner appealed that decision to the Ohio Supreme Court, raising the following three assignments of error:

Proposition of Law I: Whether the trial court abused its discretion when denying Appellant's motion to vacate or set aside conviction without an evidentiary hearing.

Proposition of Law II: Whether Appellant was prejudiced and denied due process and a fair trial due to the intentional withholding of *Brady* material evidence.

6

<u>Proposition of Law III</u>: Whether Appellant was deprived of his Sixth Amendment guarantees as a result of trial counsel's failure to investigate and deficient performance rendering the jury trial fundamentally unfair.

(*Id.* at PageID ## 260–76.)  The Court declined to accept jurisdiction on December 13, 2022.

(*Id.* at PageID # 293.)

On August 10, 2022, while his post-conviction appeal was pending in the state appellate court, Petitioner, proceeding *pro se*, sought a writ of habeas corpus pursuant to 28 U.S.C § 2254.

(ECF No. 1.)  In his Petition, he raises the following grounds for relief:

**GROUND ONE:** THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S R.29 MOTION FOR ACQUITTAL.

Supporting Facts: At the close of the prosecution's case, the trial court denied defense counsel's Crim. R. 29 motion for acquittal raised based upon the State's failure to provide sufficient evidence to prove that Petitioner knowingly removed the alleged victim from one place to another or restrained her liberty to meet the elements of the kidnapping statute, considering the alleged victim testified that she willingly walked with Petitioner to secluded area of the field.  Also, that the State failed to prove that Petitioner engaged in non-consensual sexual conduct by force or threat of force to meet the elements of the rape statute, where the alleged victim testified to willingly walking to the alleged crime scene, accepted a jacket from Petitioner while walking with her live-in boyfriend more than four (4) hours after the alleged rape, had sex with her boyfriend that same night as the alleged crime, and did not report the alleged crime until two (2) days later, refused to have a hospital examination and continuously avoided the investigating officers.

Petitioner was also accused of and tried for allegedly robbing the alleged victim of her purse, phone, necklace and money and was acquitted of both robbery charges.

**GROUND TWO:** THE VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

Supporting Facts: The alleged victim testified to willingly walking with Petitioner to the alleged crime scene, did not accuse him of raping her when accepting a jacket from Petitioner in the presence of her live-in boyfriend, had sex with her boyfriend the same night as the alleged rape and did not report the alleged rape until two (2) days after the alleged crime, refused to get examined by a doctor, and changed her story several times during the investigation and trial testimony.

The alleged victim had also accused Petitioner of robbing her of personal items during the alleged kidnapping and rape, but the jury rendered not guilty verdicts on both of the robbery charges.

**GROUND THREE:** THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT ON A COUNT OF RAPE UNDER R.C. § [] 2907.02 WITHOUT ADEQUATELY EXPLAINING THE DUTIES OF A SEX OFFENDER.

Supporting Facts: The trial court failed to fully inform Petitioner of the Tier III Sex Offender duties upon release during sentencing as required by the sentencing statutes and the sex-offender statutes.

**GROUND FOUR:** THE TRIAL COURT ABUSED ITS DISCRETION WHEN DENYING APPELLANT'S MOTION TO VACATE OR SET ASIDE CONVICTION WITHOUT AN EVIDENTIARY HEARING.

Supporting Facts: Petitioner filed his motion to vacate or set aside conviction on February 8, 2022 arguing that he was unavoidably prevented from discovering the facts to support the claims raised in the motion due to the prosecution's intentional withholding of exculpatory evidence and trial counsel's failure to conduct pretrial investigation. And that he was not provided a full copy of the trial transcript preventing him from being able to adequately pursue his remedies.

The trial court denied the motion on March 1, 2022 without providing findings of facts and conclusions of law.

**GROUND FIVE:** APPELLANT WAS PREJUDICIALLY DENIED DUE PROCESS AND A FAIR TRIAL DUE TO THE INTENTIONAL WITHHOLDING OF BRADY MATERIAL EVIDENCE.

Supporting Facts: The prosecution failed to disclose the video footage in and around the alleged crime scene from the date of the alleged crime to defense counsel. Petitioner presented that the video footage would have depicted him and the alleged victim smoking crack cocaine together and then the two of them kissing, hugging and holding hands when walking to a secluded area to have consensual sex. Also, that the video footage would have shown Petitioner and the alleged victim together selling her purse to the bartender the day after the alleged kidnapping and rape.

**GROUND SIX:** APPELLANT WAS DEPRIVED OF HIS SIXTH AMENDMENT GUARANTEES AS A RESULT OF TRIAL COUNSEL'S FAILURE TO INVESTIGATE AND DEFICIENT PERFORMANCE RENDERING THE JURY TRIAL FUNDAMENTALLY UNFAIR.

8

Supporting Facts: Petitioner informed court-appointed trial counsel that he and the alleged victim had a prior friendly relationship and that on the day after the alleged kidnapping and rape, he and the alleged victim walked into the neighborhood bar together and sold her purse to the bartender, and that it was captured by surveillance cameras inside of the bar.  Also, that surveillance cameras inside and outside of the bar would have captured Petitioner and the alleged victim together on the day of the alleged crime in the field behind the bar and on the patio the day after the alleged kidnapping and rape.

(*Id.* at PageID ## 6–13.)

On December 16, 2022, Respondent filed the state court record (ECF No. 10), and filed a Return of Writ, arguing that Petitioner's claims should be dismissed due to procedural default, as not cognizable, or on the merits.  (ECF No. 11.)  On March 7, 2023, Petitioner filed his Reply. (ECF No. 19.)  Respondent filed the supplemental state court record on October 10, 2023.  (ECF No. 22-1.)  This matter is now ripe for review.

## II.    Standard of Review

The Sixth Circuit Court of Appeals relatively recently discussed the appropriate standard of review for habeas claims brought by state prisoners in *Stermer v. Warren*, 959 F.3d 704, 720–22 (6th Cir. 2020).  "Petitions for habeas corpus brought by state prisoners are subject to 28 U.S.C. § 2254, the modern version of which comes from the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA')."  *Id.* at 720 (citing *Northrop v. Trippett*, 265 F.3d 372, 376 (6th Cir. 2001); *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999)).  "AEDPA requires habeas petitioners to exhaust their claims in state court before turning to a federal court for relief."  *Id.* (citing 28 U.S.C. § 2254(b)(1)).  "And if a state court decides a claim on the merits, that decision is subject to significant deference."  *Id.* (citing *Harrington v. Richter*, 562 U.S. 86, 101 (2011); *Jordan v. Warden, Lebanon Corr. Inst.*, 675 F.3d 586, 592–93 (6th Cir. 2012)).

"For a federal court to grant relief in such a case, the state court's decision must have been '(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal

9

law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* at 720–21 (quoting 28 U.S.C. § 2254(d)). "Under these rules, a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 721 (citations and internal quotation marks omitted). "This deference applies even when the state court fails to explain its reasoning, in which case 'the federal court "must determine what arguments or theories . . . could have supported the state court's decision"' and afford those theories AEDPA deference." *Id.* (quoting *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (per curiam) (alteration in original); *Harrington*, 562 U.S. at 102)). "Furthermore, 'evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"Section 2254(d) also determines which facts a federal court can consider." *Id.* "When assessing whether the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law,' . . . the reviewing court 'is limited to the record that was before the state court that adjudicated the claims on the merits[.]'" *Id.* (quoting 28 U.S.C. § 2254(d)(1); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). "Because of this, a district court cannot use a federal evidentiary hearing to supplement the record when assessing a claim under § 2254(d)." *Id.* (citing *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 465 (6th Cir. 2012)). "That said, if a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination

was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits." *Id.* (citations omitted).

"If a habeas petitioner satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d), AEDPA deference no longer applies." *Id.* "Instead, the petitioner's claim is reviewed *de novo* as it would be on direct appeal." *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)). "The district court would also be free to expand the record, provided that the petitioner diligently attempted to present those facts in state court (or alternatively if [he] meets AEDPA's narrow exception for evidence of actual innocence)." *Id.* at 721–22 (citations omitted).

## III.    Discussion and Analysis

Petitioner filed the instant federal habeas corpus action, raising six grounds for relief. (Petition, ECF No. 1.) Respondent asserts that the six grounds are either procedurally defaulted, not cognizable, or meritless. (Return, ECF No. 11.) The Undersigned addresses each claim in turn.

### A.    Claim 1: Trial Court Error – Sufficiency of the Evidence

In his first ground for relief, Petitioner asserts that the trial court erred by denying his Rule 29 Motion for Acquittal after the prosecution closed its case. (Petition, ECF No. 1, PageID # 6.) Petitioner contends that the prosecution failed to prove the elements of kidnapping because "the alleged victim testified that she willingly walked with Petitioner to secluded area of the field." (*Id.*) Petitioner also maintains that the prosecution failed to prove the elements of rape for various reasons, highlighting that the prosecution did not prove that the sexual activity was non-consensual. (*Id.*) Because challenging the sufficiency of the evidence presents a cognizable habeas claim and does not appear to be procedurally defaulted, the analysis focuses on the merits

under AEDPA deference. *Stermer*, 959 F.3d at 720–22 (citing *Harrington*, 562 U.S. at 101; *Jordan*, 675 F.3d at 592–93).

A criminal defendant may be convicted consistent with the United States Constitution only if the evidence adduced at trial is sufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). To determine whether the evidence was constitutionally sufficient to support a conviction, a court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (quoting *Jackson*, 443 U.S. at 319); *Moreland v. Bradshaw*, 699 F.3d 908, 916–17 (6th Cir. 2012) (citations omitted). The prosecution is not required to affirmatively "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson*, 443 U.S. at 326). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* at 296–97 (quoting *Jackson*, 443 U.S. at 326).

Further, this Court must afford a "double layer" of deference to state court determinations about the sufficiency of the evidence. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009); *Moreland*, 699 F.3d at 916–17 (citing *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010). As explained in *Brown*, deference must be given, first, to the jury's finding of guilt because the standard, established by *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (emphasis in original) (citing *Jackson*, 443 U.S. at 319). Second, and even if *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal

habeas court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original) (citing 28 U.S.C. § 2254(d)(2)); *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).  This is a substantial hurdle for a habeas petitioner to overcome.

"A conviction may be sustained based upon nothing more than circumstantial evidence." *Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008) (citing *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)); *Gipson v. Sheldon*, 659 F. App'x 871, 877 (6th Cir. 2016) ("Circumstantial evidence is sufficient to support a conviction as long as the jury is convinced beyond a reasonable doubt." (citations omitted)).  Moreover, "a federal habeas court reviewing the sufficiency of evidence to support a conviction need not rule out all possible interpretations of the circumstantial evidence." *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. Feb. 28, 2002) (citing *Jamison v. Collins*, 100 F. Supp. 2d 647, 705 (S.D. Ohio May 10, 2000)).  Thus, a "conviction may be based upon circumstantial evidence as well as inferences based upon the evidence." *Id.* at 647–48 (citing *Gonzalez v. Reiner*, 177 F. Supp. 2d 211, 218 (S.D.N.Y. Nov. 13, 2001) (quoting *United States v. Strauss*, 999 F.2d 692, 696 (2nd Cir. 1993)).

As noted above, Petitioner claims that the trial court erred by not granting his Rule 29 Motion for Acquittal when the prosecution failed to present sufficient evidence to establish the kidnapping and rape charges.  (Petition, ECF No. 1, PageID # 6.)  In response to the alleged error, Respondent notes that Petitioner's claim is "nothing more than a disagreement with the credibility determinations of the jury."  (Return, ECF No. 11, PageID # 727.)  Respondent asserts that the state court decision denying this claim is afforded deference under the AEDPA, contending that the state court decision was not unreasonable.  (*Id.* at PageID # 728.)

In his Reply, Petitioner reiterates that the alleged victim "admitted to willingly walking into a secluded area of the open field" with him. (Reply, ECF No. 19, PageID # 902.) Petitioner also points out that the prosecution did not present evidence that Petitioner "used an aggressive or threatening demeanor or tone when requesting for her to go with him." (*Id.*) Further, Petitioner contends that on direct appeal, the state appellate court construed his argument as a credibility of the witness claim, which should be confined to an argument about the manifest weight of the evidence, not about sufficiency of the evidence. (*Id.* at PageID # 903.)

The state appellate court provided the following in rejecting this claim on direct appeal:

{¶ 16} In his first assignment of error, appellant contends that the trial court erred by denying his Crim.R. 29(A) motion for acquittal. A Crim.R. 29(A) motion for judgment of acquittal tests the sufficiency of the evidence. *State v. Reddy*, 10th Dist. No. 09-AP-868, 2010-Ohio-3892, ¶ 12, citing *State v. Knipp*, 4th Dist. No. 06CA641, 2006-Ohio-4704, ¶ 11. Accordingly, an appellate court reviews a trial court's denial of a Crim.R. 29(A) motion using the same standard applicable to a sufficiency of the evidence review. *Id.*, citing *State v. Darrington*, 10th Dist. No. 06AP-160, 2006-Ohio-5042, ¶ 15.

{¶ 17} Sufficiency of the evidence is the legal standard that tests whether the evidence introduced at trial is legally adequate to support a verdict. *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 15, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Whether the evidence is legally sufficient to support a verdict is a question of law, not fact." *State v. Cervantes*, 10th Dist. No. 18AP-505, 2019-Ohio-1373, ¶ 24, citing *Kurtz* at ¶ 15, citing *Thompkins* at 386. In determining whether the evidence is legally sufficient to support a verdict, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 18} "In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *Kurtz* at ¶ 16, citing *State v. Yarborough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80. "The court essentially assumes the state's witnesses testified truthfully and determines whether that testimony satisfies each element of the crime." *State v. Davis*, 10th Dist. No. 18AP-921, 2019-Ohio-4692, ¶ 38, citing *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4. Further, "[t]he testimony of even 'one witness, if believed by the jury, is enough to support a conviction.' " *State v. Loomis*, 10th Dist. No. 17AP-843, 2019-Ohio-

2576, ¶ 54, quoting *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42.

{¶ 19} The jury found appellant guilty of rape in violation of R.C. 2907.02 and kidnapping in violation of R.C. 2905.01. R.C. 2907.02 provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force. * * * Whoever violates this section is guilty of rape, a felony of the first degree." R.C. 2907.02(A)(2) and (B). Pursuant to R.C. 2907.01(A), "[s]exual conduct" is defined in relevant part as "vaginal intercourse between a male and female. * * * Penetration, however slight, is sufficient to complete vaginal * * * intercourse." "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶ 20} Kidnapping is proscribed by R.C. 2905.01, which provides in relevant part that "[n]o person, by force * * * shall * * * restrain the liberty of the [victim] * * * [t]o engage in sexual activity, as defined in [R.C. 2907.01], with the victim against the victim's will." R.C. 2905.01(A)(4). " 'Sexual activity' means sexual conduct or sexual contact, or both." R.C. 2907.01(C). "Whoever violates [R.C. 2905.01] is guilty of kidnapping." R.C. 2905.01(C)(1).

{¶ 21} Though appellant argues that the trial court erred in denying his Crim.R. 29 motion because the state failed to present sufficient evidence to prove the elements of rape and kidnapping, his argument, in essence, relates to the credibility of A.S.'s testimony that appellant pinned her to the ground and inserted his penis into her vagina. Indeed, appellant contends that A.S.'s testimony that she went willingly with appellant, failed to report the incident for several hours, and altered her account of the incident in interviews with police suggests that the sexual encounter with appellant was consensual and that she was lying about being raped. However, " 'in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime.' " *State v. Scott*, 10th Dist. No[.] 18AP-964, 2019-Ohio-4175, ¶ 12, quoting *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4. Thus, we will address appellant's credibility arguments in our analysis of his second assignment of error, which argues that his convictions were against the manifest weight of the evidence.

{¶ 22} Appellant's failure to assert a pure sufficiency argument aside, we nonetheless conclude that the testimony of A.S., if believed, provided sufficient evidence to satisfy the elements of a rape offense beyond a reasonable doubt. A.S. testified that appellant pushed her to the ground, removed her leggings and his pants, climbed on top of her, and inserted his penis into her vagina. She further testified that because she was so much smaller than appellant, she could not

physically defend herself against him.  This testimony, if believed, established that appellant purposely compelled A.S., through the use of force, to submit to sexual conduct, i.e., vaginal intercourse.

{¶ 23} A.S.'s testimony also supports the separate guilty verdict for kidnapping. As noted, A.S. testified that appellant pushed her to the ground, climbed on top of her, and engaged in vaginal intercourse with her.  She estimated that appellant outweighed her by more than 100 pounds; as such, she could not physically defend herself against him.  This testimony, if believed, was sufficient to establish beyond a reasonable doubt that appellant forcefully restrained A.S.'s liberty to engage in sexual activity, i.e., vaginal intercourse, with her against her will.

{¶ 24} Based on the foregoing, we conclude that the record contains sufficient evidence to support the guilty verdicts for rape and kidnapping beyond a reasonable doubt.  The jury apparently believed A.S.'s account of the events occurring on September 25, 2018.  We emphasize that the testimony of one witness, if believed by the jury, is sufficient to sustain a conviction.  *Loomis*, 10th Dist. No. 17AP-843, 2019-Ohio-2576, ¶ 54.  Appellant's first assignment of error is overruled.

(ECF No. 10, PageID ## 102–05.)

The state appellate court decision is neither contrary to, nor an unreasonable application of clearly established federal law.  In overruling this claim on direct appeal, the state appellate court construed the facts in the light most favorable to the prosecution when it concluded the record contained sufficient evidence to support Petitioner's convictions.  (*Id.*); *Jackson*, 443 U.S. at 319.  As detailed by the state appellate court, the jury heard A.S.'s account of the incident, including that Petitioner "pushed her to the ground, removed her leggings and his pants, climbed on top of her, and inserted his penis into her vagina." (ECF No. 10, PageID # 104.)  A.S. also testified that she was smaller than Petitioner and could not physically defend herself against him, given the approximate 100-pound weight difference.  (*Id.* at PageID ## 104–05.)

Petitioner maintains that A.S. walked with him willingly and that they engaged in consensual sex, without the use of force.  (Reply, ECF No. 19, PageID ## 901–03.)  As recognized by the state appellate court, however, the facts are construed in the light most favorable to the prosecution.  *Wright*, 505 U.S. at 296 (quoting *Jackson*, 443 U.S. at 319); (ECF

No. 10, PageID # 103.) Moreover, which Petitioner acknowledges, this Court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury." *Brown*, 567 F.3d at 205 (citing *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Construing A.S.'s testimony in the light most favorable to the prosecution, including that Petitioner pushed A.S. to the ground and A.S. felt unable to defend herself while Petitioner was on top of her, a reasonable factfinder could determine that the evidence presented was sufficient to convict Petitioner. The state appellate court noted that the "jury apparently believed A.S.'s account of the events," and concluded that the "record contain[ed] sufficient evidence to support the guilty verdicts." (ECF No. 10, PageID # 105.) The state appellate court's analysis comports with *Jackson* and its progeny. The court was therefore not unreasonable in concluding that the record contained sufficient evidence to convict Petitioner for both the rape and kidnapping charges. As noted above, both the jury verdict and the state appellate court decision are afforded deference, and the Undersigned does not find either to be unreasonable. *Brown*, 567 F.3d at 205.

This claim is without merit and should be **DISMISSED**.

### B. Claim 2: Manifest Weight of the Evidence

In his second ground for relief, Petitioner contends that the rape and kidnapping convictions were against the manifest weight of the evidence. (Petition, ECF No. 1, PageID # 7.) Respondent asserts that this claim is not cognizable in federal habeas proceedings. (Return, ECF No. 11, PageID ## 728–29.) Petitioner does not appear to address this claim in his Reply. (*See* ECF No. 19.) The state appellate court denied this claim on direct appeal, concluding that the "weight of the evidence supports the verdicts reached by the jury." (ECF No. 10, PageID # 108.)

The Sixth Circuit has found that a "manifest-weight claim is not cognizable on federal habeas review because it is a state-law argument." *Thomas v. Taskila*, No. 23-1423, 2023 U.S.

17

App. LEXIS 30660, at *17 (6th Cir. Nov. 16, 2023) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–

68 (1991); *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007)); *Myers v. Haviland*, No.

17-4220, 2018 U.S. App. LEXIS 38924, at *5 (6th Cir. Apr. 12, 2018) (citing *Johnson v.*

*Havener*, 534 F.2d 1232, 1234 (6th Cir. 1976)) ("[S]uch a claim does not present a federal

constitutional question and is not cognizable on federal habeas review.").  Further, this Court

"may not 'reweigh the evidence or re-determine the credibility of the witnesses whose demeanor

has been observed by the trial court' because in habeas proceedings, '[i]t is the province of the

factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.'"

*Shedwick v. Warden, North Corr. Inst.*, No. 2:13-cv-1230, 2015 WL 5785719, at *7 (S.D. Ohio

Oct. 5, 2015) (Deavers, J.) (quoting *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003))

(concluding that manifest weight of the evidence claims could not be reviewed by a federal

District Court).  Here, Petitioner raises a state law claim, alleging his convictions were against

the manifest weight of evidence, without asserting a cognizable federal habeas claim.  (Petition,

ECF No. 1, # 7.)

      Accordingly, this claim is not cognizable and should be **DISMISSED**.

      **C.      Claim 3: Trial Court Error – Explanation of Sex-Offender Registration**

      In his third ground for relief, Petitioner asserts that the trial court erred in failing to

adequately explain the sex offender registration requirements.  (*Id.*)  Respondent contends that

this claim is not cognizable in federal habeas proceedings.  (Return, ECF No. 11, PageID # 730.)

Respondent notes that, in the alternative, the claim lacks merit and the state appellate court was

not unreasonable in denying this claim on direct appeal.  (*Id.* at PageID ## 731–34.)  Petitioner

does not appear to address this claim in his Reply.  (*See* ECF No. 19.)  The state appellate court

denied this claim on direct appeal, pointing out that the state trial court engaged in a colloquy

with Petitioner to explain the Tier III sex offender registration requirements under Ohio Revised Code ("O.R.C.") Chapter 2950. (ECF No. 10, PageID ## 108–12.) The state appellate court also noted that the trial court referenced the "Explanation of Duties to Register as a Sex Offender" form, which Petitioner had signed before sentencing. (*Id.* at PageID ## 111–12; *see id.* at PageID # 54 (providing the signed form).)

Respondent points out that federal habeas relief is not warranted when the basis is a "perceived error of state law." (Return, ECF No. 11, PageID # 730 (quoting *Pulley v. Harris*, 465 U.S. 37, 41 (1984)) (citing *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988)).) Petitioner maintains that the state trial court did not "fully inform" him of his registration duties as required by Ohio's sentencing and sex offender statutes. (Petition, ECF No. 1, PageID # 9.) Petitioner does not provide, and this Court is not otherwise aware of, any authority demonstrating that this claimed error implicates a federal constitutional right. Because this claim does not raise a question regarding a violation of the United States Constitution, or federal laws or treaties, it is not cognizable in federal habeas proceedings. *Estelle*, 502 U.S. at 67–68 ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Accordingly, this claim is not cognizable and should be **DISMISSED**.

### D.      Claim 4: Trial Court Error – Denying Evidentiary Hearing

In his fourth ground for relief, Petitioner asserts that the trial court abused its discretion when it denied Petitioner's post-conviction petition without holding an evidentiary hearing. (Petition, ECF No. 1, PageID # 10.) Petitioner points out that he was "unavoidably prevented from discovering the facts to support" his claim due to the prosecution withholding exculpatory

evidence and his defense counsel failing to investigate. (*Id.*) Petitioner also notes that he was not provided the full trial transcripts to adequately pursue relief. (*Id.*)

Respondent contends that this claim is not cognizable in federal habeas actions because it "challenges supposed deficiencies in the post-conviction proceedings" instead of attacking the underlying convictions. (Return, ECF No. 11, PageID ## 734–35.) Petitioner does not appear to address this claim in his Reply. (*See* ECF No. 19.)

Raising a claim alleging that the state trial court erred during a petitioner's post-conviction proceedings does not attack the judgment of the underlying conviction. *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Kirby v. Dutton*, 794 F.2d 245, 246–48 (6th Cir. 1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002); *Alley v. Bell*, 307 F.3d 380, 387 (6th Cir. 2002); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001)) (finding that a challenge to a collateral proceeding that does not attack the underlying conviction giving rise to a petitioner's incarceration, like an error in a state post-conviction action, is not appropriate in federal habeas review. Further, the Sixth Circuit has affirmed a district court's conclusion that "challenges to state post-conviction proceedings," such as alleged state trial court error in denying a post-conviction petition without an evidentiary hearing, are "outside the scope of federal habeas corpus review." *Webster v. Horton*, 795 F. App'x 322, 328 (6th Cir. 2019) (quoting *Cress*, 484 F.3d at 853); *Hatton v. Richard*, No. 2:15-cv-01506, 2016 WL 471292, at *3 (S.D. Ohio Feb. 8, 2016) (citing 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209, 221 (1982); *Barclay v. Florida*, 463 U.S. 939 (1983)) ("[A] district court may not review a state court conviction for errors of state law, e.g., denial of a motion for new trial. Federal habeas corpus is available only to correct federal constitutional violations."); *Simpson v. Campbell*, No. 22-1407, 2022 U.S. App. LEXIS

20

34307, at *5 (6th Cir. Dec. 13, 2022) (*Estelle*, 502 U.S. at 67–68) ("The trial court's failure to hold an evidentiary hearing is an issue of state evidentiary law that does not support federal habeas relief[.]"); *see Lindsey v. Warden, Chillicothe Corr. Inst.*, No. 1:03-cv-702, 2020 WL 7769816, at *28 (S.D. Ohio Dec. 30, 2020) (Deavers, J.) (citing *Leonard v. Warden*, 846 F.3d 832, 854–55 (6th Cir. 2017); *Cornwell v. Bradshaw*, 559 F.3d 398, 411 (6th Cir. 2009)) (finding that a petitioner's claim attacking the state court in post-conviction was not cognizable in federal habeas review).

Petitioner attempts to challenge a state trial court decision from his post-conviction proceedings and does not attack the underlying conviction. (Petition, ECF No. 1, PageID # 10); *Cress*, 484 F.3d at 853. An evidentiary hearing is a matter of state law and not within a district court's purview in a federal habeas action. *Estelle*, 502 U.S. at 67–68; *Webster*, 795 F. App'x at 328 (quoting *Cress*, 484 F.3d at 853).

Accordingly, this claim is not cognizable and should be **DISMISSED**.

### E.    Claim 5: *Brady* Violation

In his fifth ground for relief, Petitioner asserts that the prosecution withheld material evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Petition, ECF No. 1, PageID # 12.) Petitioner contends that the prosecution failed to disclose favorable video footage from the alleged crime scene and surrounding area. (*Id.*)

Respondent contends that this claim is procedurally defaulted because Petitioner presented the claim to the state courts in an untimely post-conviction petition. (Return, ECF No. 11, PageID # 718 (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).) Respondent points out that Petitioner failed to file a Rule 26(B) application to preserve an ineffective

assistance of appellate counsel claim.[2]  (*Id.*)  Further, Respondent notes that absent a showing of cause and prejudice to excuse the default, all parts of the *Maupin* test have been met.  (*Id.* at PageID ## 719–20.)

In his Reply, Petitioner contends that the state appellate court did not explicitly rely on the timeliness issue in denying this claim in post-conviction.  (Reply, ECF No. 19, PageID # 895.)  Petitioner also asserts that failing to conduct a merits analysis of this claim would result in a fundamental miscarriage of justice, which requires a showing of actual innocence.  (*Id.* at PageID ## 897–900 (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Dretke v. Haley*, 541 U.S. 386, 393 (2004)).)  Petitioner claims he is actually innocent, noting that the alleged video footage would show that he and the alleged victim "first smoked crack cocaine together and then had consensual sex."  (*Id.* at PageID ## 897–99.)  Addressing the merits of this claim, Petitioner points out that video footage from the same location was available for a different incident that occurred two months before his alleged crimes.  (*Id.* at PageID ## 898–99, 904 (citing *State v. Robinson*, 2020-Ohio-3557, 2020 WL 3545740 (Ohio 10th Dist. June 30, 2020)).)

---

[2] To note, Ohio allows criminal defendants to file a Rule 26(B) application to reopen an appeal attacking the judgment and conviction, based on the ineffective assistance of appellate counsel.  Ohio App. R. 26(B)(1).  The application must be filed with the state appellate court where the appeal was decided within ninety days of that decision, unless good cause is shown.  *Id.*; *Ramirez v. Richard*, No. 16-3106, 2016 WL 11848848, at *4–5 (6th Cir. 2016) (citing *Fautenberry v. Mitchell*, 515 F.3d 614, 639–40 (6th Cir. 2008); *Goldberg v. Maloney*, 692 F.3d 534, 538 n.3 (6th Cir. 2012)).  Upon review of the record, it appears that Petitioner did not file a Rule 26(B) application.  (*See* ECF No. 10; Return, ECF No. 11, PageID # 718.)  The state appellate court decided Petitioner's appeal on March 9, 2021.  (ECF No. 10, PageID # 99), meaning Petitioner's Rule 26(B) application was due in June 2021.  Ohio App. R. 26(B)(1).  Because Petitioner failed to file a Rule 26(B) application and would be time-barred from doing so now, any claim of ineffective assistance of appellate counsel is procedurally defaulted and cannot serve as cause to excuse the default for this claim or claim six below.  *Ramirez*, 2016 WL 11848848, at *4–5 (citing *Goldberg*, 692 F.3d at 538).

In addressing this claim in post-conviction, the state appellate court noted the following

in relevant part:

> **{¶ 8}** When an individual who has taken a direct appeal files a postconviction relief petition, it must be filed "no later than three hundred sixty-five days after the date on which the trial transcript is filed in the court of appeals." R.C. 2953.21(A)(2)(a). In this case, the trial transcript was filed in Black's direct appeal on November 6, 2019. Black filed his petition to vacate his convictions on February 8, 2022; because this was more than one year after the transcript was filed in his direct appeal, the petition was untimely.

> **{¶ 9}** "[A] court 'may not entertain' an untimely or successive postconviction relief petition unless the requirements of R.C. 2953.23(A)(1) or (2) are met." *Vinson* at ¶ 9, quoting R.C. 2953.23(A). "Therefore, a petitioner's failure to satisfy R.C. 2953.23(A) deprives a trial court of jurisdiction to adjudicate the merits of an untimely or successive postconviction petition." *State v. Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, ¶ 36. Whether a trial court has jurisdiction over an untimely petition for postconviction relief is a question of law, which we review de novo. *Vinson* at ¶ 9.

## IV. LEGAL ANALYSIS

**{¶ 10}** In his first assignment of error, Black argues that the trial court erred by denying his petition for postconviction relief without conducting an evidentiary hearing. Because Black's petition was untimely, the trial court only had jurisdiction to consider the merits of the petition if the requirements of R.C. 2953.23(A)(1) or (2) were met. *Apanovitch* at ¶ 36. Black did not rely on DNA testing to establish his innocence; therefore, R.C. 2953.23(A)(2) is not relevant to his petition and we will focus solely on whether R.C. 2953.23(A)(1) was satisfied. Under R.C. 2953.23(A)(1), a petitioner must demonstrate that he was "unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief" or that the United States Supreme Court recognized a new state or federal right that applies retroactively to him. R.C. 2953.23(A)(1)(a). The petitioner also must establish by clear and convincing evidence that, but for the alleged constitutional error at trial, no reasonable factfinder would have found him guilty. R.C. 2953.23(A)(1)(b).

**{¶ 11}** Black asserts he was unavoidably prevented from discovering the facts alleged in support of the claims asserted in his petition for postconviction relief. " 'The "facts" contemplated by R.C. 2953.23(A)(1)(a) are the historical facts of the case, which occurred up to and including the time of conviction.' " *Vinson* at ¶ 16, quoting *State v. Turner*, 10th Dist. No. 06AP-876, 2007-Ohio-1468, ¶ 11. " 'The phrase "unavoidably prevented" in R.C. 2953.23(A)(1)(a) means that a defendant was unaware of those facts and was unable to learn of them through reasonable

diligence.' " *Id.*, quoting *Turner* at ¶ 11. Thus, the exception provided in R.C. 2953.23(A)(1)(a) involves newly discovered evidence. *Id.*

{¶ 12} Black generally alleged in his petition that A.S.'s trial testimony was false. He asserted A.S. knew him before the incident and that they had done drugs together in the past. Black claimed A.S. approached him on the day of the incident and agreed to have sex in exchange for drugs. Black claimed he told his trial counsel about witnesses who would testify to the existence of a friendly relationship between him and A.S. In the petition, Black claimed there were affidavits from witnesses at the Sandpebble and from A.S.'s boyfriend, but no such affidavits were attached to his petition. Black alleged there was surveillance video from the Sandpebble or the surrounding area that would exonerate him. Black also asserted there was exculpatory material contained on a state laptop computer. Black claimed his trial counsel failed to investigate the facts of the case or subject the state's evidence to meaningful adversarial testing.

{¶ 13} On appeal, Black argues he was unavoidably prevented from discovering the facts asserted in support of his petition due to the state's withholding of exculpatory evidence and his trial counsel's failure to investigate and obtain the evidence on which he now relies.

{¶ 14} Black asserts the state failed to produce two types of exculpatory evidence: (1) surveillance video from the Sandpebble and surrounding buildings and (2) video or audio evidence contained on a state laptop computer that contradicted A.S.'s testimony. **As discussed more fully below, Black has failed to demonstrate that any surveillance video existed.** Black claims there were surveillance cameras on the exterior of the Sandpebble and nearby buildings. Black does not assert, however, that he became aware of the existence of those purported cameras after his trial. Thus, Black would have known at the time of his trial that these alleged cameras existed. Similarly, the trial transcript demonstrates that an audio recording was played outside the presence of the jury to refresh A.S.'s recollection of her prior statements. That recording appears to be the evidence contained on a state laptop computer that Black claims was withheld. The record indicates the state produced audio recordings of witness interviews in discovery. Because a portion of the recording was played to A.S. during the trial, Black necessarily was aware of this evidence at the time of trial.

{¶ 15} Other than the alleged witness affidavits, it is apparent that all the facts alleged in Black's petition were known or readily available to him at the time of trial. *See Vinson* at ¶ 17 ("The facts supporting appellant's claim that the search warrant was defective were, therefore, readily available to appellant prior to her prosecution and throughout the criminal proceedings."); *see also State v. Teitelbaum*, 10th Dist. No. 19AP-137, 2019-Ohio-3175, ¶ 14 (concluding petitioner was not unavoidably prevented from discovery of the facts relied on in support of his claim because the fact that no warrant had been used to obtain cell phone site location was apparent at the time of trial). Regarding the alleged witness

affidavits, Black's petition did not identify the purported witnesses or provide any information about the contents of the alleged affidavits, and none of the alleged affidavits were attached to the petition. Therefore, Blacks fails to demonstrate that these affidavits contained any newly discovered evidence. Moreover, the trial court had no basis to determine the credibility of these affidavits. *See State v. Calhoun*, 86 Ohio St.3d 279, 285 (1999) (setting forth factors to be considered in assessing credibility of supporting affidavits in postconviction relief proceedings).

{¶ 16} Black failed to demonstrate that he was unavoidably prevented from discovery of the facts relied upon in his petition; accordingly, we need not determine whether he presented clear and convincing evidence that but for the alleged constitutional error no reasonable factfinder would have found him guilty. *See Turner* at ¶ 18 ("Because the two prongs set forth in R.C. 2953.23 are stated in the conjunctive, and we have found appellant failed to satisfy the first prong under R.C. 2953.23(A)(1)(a), we need not address whether appellant presented clear and convincing evidence demonstrating that no reasonable fact finder would have found him guilty in the absence of the alleged constitutional error, pursuant to the second prong in R.C. 2953.23(A)(1)(b)."). **Because Black's petition was untimely and he failed to satisfy the requirements of R.C. 2953.23(A)(1), the trial court lacked jurisdiction to consider the merits of the petition** and did not err by denying it without an evidentiary hearing. Accordingly, we overrule Black's first assignment of error.

{¶ 17} **Notwithstanding our conclusion that the trial court lacked jurisdiction over Black's petition**, we will briefly consider the arguments asserted in support of his second and third assignments of error.

{¶ 18} In his second assignment of error, Black asserts the trial court erred by denying his petition because the state withheld exculpatory evidence. Black alleges there were surveillance cameras inside and outside the Sandpebble and on the surrounding buildings, including an exterior camera pointed toward the open field A.S. crossed to access the Sandpebble. Black argues the police necessarily would have obtained video recordings from those cameras as part of their investigation. He claims the video recordings would have shown A.S. voluntarily approach him in the open field while he was smoking drugs and engage in sexual acts with him in exchange for drugs. Black alleges his rights to due process and a fair trial were violated by the state's failure to disclose this video surveillance evidence.

{¶ 19} "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *See also State v. Johnston*, 39 Ohio St.3d 48 (1988), paragraph four of the syllabus (following *Brady*). To establish a *Brady* violation, a defendant must demonstrate that: (1) the prosecution withheld evidence, (2) the defense was not aware of the evidence, and (3) the withheld evidence was material and exculpatory. *State v. Hawk*, 10th Dist. No. 21AP-265,

2021-Ohio-4533, ¶ 20. *See also State v. Bethel*, __ Ohio St.3d __, 2022-Ohio-783, ¶ 19, quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) (" 'There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.' ").

{¶ 20} Implicit within the first element of a *Brady* claim is that the evidence allegedly withheld must have actually existed. In this case, there is nothing other than Black's unsupported allegations to establish that there was any video evidence from the area around the Sandpebble. The police detective who investigated the case testified at trial that he did not look for surveillance cameras around the open field. An item that could be a surveillance camera can be seen on one of the crime scene area photos introduced at trial. However, even if the item visible in that photograph was a surveillance camera, there is no evidence it was operable or what was within range of the camera. The investigating detective testified that the photo depicted the front of a neighboring building and that the open field area whether the assault occurred was behind the building. Black has not provided any evidence beyond his bare assertions to affirmatively demonstrate there were any surveillance cameras in the area or that any video evidence relevant to the charges against him existed.

{¶ 21} The Third District Court of Appeals rejected a similar claim, in which a defendant asserted a *Brady* violation occurred when the prosecutor failed to disclose a surveillance tape of the crime scene. *State v. Lester*, 3d Dist. No. 2-07-23, 2007-Ohio-5627, ¶ 15. The appellate court noted the appellant provided no proof that such a surveillance tape actually existed and concluded it could not find a *Brady* violation where the allegedly exculpatory evidence did not exist. *Id.* Likewise in this case, Black cannot establish a *Brady* violation based solely on his unsupported assertion that exculpatory surveillance videos *could have* existed without some evidence to suggest that such videos actually did exist.

{¶ 22} Accordingly, we overrule Black's second assignment of error.

(ECF No. 10, PageID ## 246–52 (footnote omitted) (emphasis added).)

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to

dismissal for failure to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Over time, the term "procedural default" has come to describe a situation where a person convicted of a crime in a state court fails (for whatever reason) to properly present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal, before a federal court intervenes in the state criminal process. This fair presentment requirement "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. In other words, if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were *not* resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted." It is well settled that a "common example of a procedural default is a failure to raise a claim in state court in a timely manner." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (citing the four-part *Maupin* standard). The Sixth Circuit has provided the following test:

> (1) [T]he court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (citing *Maupin*, 785 F.2d at 138). In order to establish cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Bies v. Sheldon*, 775 F.3d 386, 396 (6th Cir. 2014) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). The petitioner bears the burden of showing cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999)).

In concluding that a claim is procedurally defaulted under *Maupin*, a district court will not consider the merits of the claim unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray*, 477 U.S. at 495–96). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a

showing of cause for the procedural default." *Gibbs v. United States*, 655 F.3d 473, 477 (6th Cir. 2011) (quoting *Murray*, 477 U.S. at 496); *Strouth v. Colson*, 680 F.3d 596, 608 (6th Cir. 2012).

Respondent asserts that Petitioner's *Brady* claim is procedurally defaulted. (Return, ECF No. 11, PageID # 718.) The Undersigned agrees. Regarding the *Maupin* test, Petitioner failed to follow a state procedural rule when he filed an untimely post-conviction petition to the state trial court. Petitioner was required to file his petition one year after the trial transcript was filed in the state appellate court. O.R.C. § 2953.21(A)(2)(a). The record reflects that the State filed the trial record on November 6, 2019. (ECF No. 10, PageID # 297.) Petitioner's post-conviction petition was therefore due in November 2020. O.R.C. § 2953.21(A)(2)(a). Petitioner filed his post-conviction petition on February 8, 2022, more than a year after the statutory deadline. (*Id.* at PageID ## 150, 294.) This untimeliness issue satisfies the first part of the *Maupin* test. *Maupin*, 785 F.2d at 138; *McNeill*, 10 F.4th at 595.

In respect to the second part of the *Maupin* test, Petitioner maintains that the state appellate court did not actually enforce the procedural rule. (Reply, ECF No. 19, PageID ## 895–96.) Petitioner notes that the state appellate court did not "state[] that it was explicitly relying on this procedural bar in affirming the denial of his post-conviction petition where the trial court essentially issued a summary denial of the petition and was silent as to a procedural default." (*Id.* at PageID # 895.) In Petitioner's post-conviction appeal, the state appellate court concluded that his petition was untimely. (ECF No. 10, PageID # 250.) Because Petitioner filed an untimely petition, the state trial court did not have jurisdiction to consider his post-conviction claims. (*Id.* (citing O.R.C. § 2953.23(A)).) Petitioner contends that the state appellate court did not apply the timeliness bar when it analyzed this claim on the merits. (Reply, ECF No. 19, PageID # 897.) The state appellate court, however, expressly concluded that Petitioner's post-

conviction was untimely.  (ECF No. 10, PageID # 250.)  Though the state appellate court did provide a merits review of this claim, the Undersigned finds that it was an alternative ruling to finding procedural default.  Notably, the state appellate court explained: "Notwithstanding ___**_our_**___ ___**_conclusion_**___ that the trial court lacked jurisdiction over Black's petition, we will briefly consider the arguments asserted in support of his second and third assignments of error."  (*Id.* (emphasis added).)  Thus, the state appellate court actually enforced the procedural bar, satisfying the second part of the *Maupin* test.  *Maupin*, 785 F.2d at 138; *McNeill*, 10 F.4th at 595.

When finding procedural default for claims raised in an untimely post-conviction petition, the Sixth Circuit has held that a statute of limitations is an adequate and independent state ground.  *Stojetz v. Ishee*, 892 F.3d 175, 205–06 (6th Cir. 2018); *Bies*, 775 F.3d at 395–96, n.7 (6th Cir. 2014) (recognizing that procedural default occurs when a petitioner's claim is barred by O.R.C. § 2953.23); *White v. Warden*, 940 F.3d 270, 275 (6th Cir. 2019) (holding that procedural default occurs when a petitioner's claim is barred by O.R.C. § 2953.21(A)(2)).  Courts in this District have found the same.  *Boyce v. Shoop*, No. 3:21-cv-216, 2023 WL 2712479, at *16 (S.D. Ohio Mar. 30, 2023); *Simmons v. Cook*, No. 1:16-cv-414, 2019 WL 7372502, at *3 (S.D. Ohio Dec. 31, 2019) (noting that the "statute of limitations, obviously protects the State's interest in finality of criminal litigation").  Petitioner seemingly concedes this point, noting that "denying a post-conviction motion or appeal based on timeliness is an independent and adequate state procedural ground."  (Reply, ECF No. 19, PageID # 893 (citing *Walker v. Martin*, 562 U.S. 307, 310–11 (2011); *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004)).)  Accordingly, the third part of the *Maupin* test is satisfied, and Petitioner's claim appears to be procedurally defaulted.  *Maupin*, 785 F.2d at 138; *McNeill*, 10 F.4th at 595.

To excuse the default, Petitioner contends that the COVID-19 pandemic caused the delay in filing his state post-conviction action.  (Reply, ECF No. 19, PageID # 894.)  Some courts have found sufficient cause to excuse default when petitioners, who diligently pursued their rights, faced filing delays and limited access to law libraries due to the COVID-19 pandemic.  *Gilmore v. Warden, London Corr. Inst.*, No. 1:22-cv-417, 2023 WL 5048081, at *6–7 (S.D. Ohio Aug. 8, 2023) (quoting *United States v. West*, 578 F. Supp. 3d 962, 966–67 (N.D. Ohio 2022); *United States v. Henry*, No. 2:17-cr-180, 2020 WL 7332657, at *4 (W.D. Pa. Dec. 14, 2020)) ("The petitioner must establish that he was pursuing his rights diligently *and* that the COVID-19 pandemic specifically prevented him from filing his motion." (emphasis in original)); *Pryor v. Erdos*, No. 21-3908, 2022 WL 1021911, at *2 (6th Cir. Mar. 31, 2022), *cert. denied*, 143 S. Ct. 272 (2022) ("There is some authority from district courts within this circuit indicating that the COVID-19 pandemic could amount to an extraordinary circumstance warranting tolling. . . . But at least one circuit court disagrees, as do some district courts in other circuits."  (citations omitted)).  To satisfy cause to excuse procedural default, a petitioner must offer, with specificity, how the COVID-19 pandemic and any related restrictions hindered his ability to timely-file in state court.  *Gilmore*, 2023 WL 5048081, at *6–7 (citations omitted).  Bare bone assertions, however, are insufficient to excuse default.  *Id.* (citing *Camelin v. Warden, Se. Corr. Inst.*, No. 2:21-cv-4070, 2022 WL 1442009, at *3 (S.D. Ohio May 6, 2022)) ("[T]his Court has found vague invocations of the COVID-19 pandemic as an extraordinary circumstance unpersuasive[.]"); *Little v. Sheldon*, No. 3:20-cv-2527-BYP, 2023 WL 2666116, at *6–7 (N.D. Ohio Mar. 6, 2023) (quoting *United States v. Sloan*, No. 20-cr-285, 2022 WL 4080631, at *3 (N.D. Ohio Sept. 6, 2022)) (rejecting a "bare-bones argument" when a petitioner failed to assert

31

specific COVID-19 related issues that prevented him from timely-filing his state court petition) (subsequent history omitted).

Here, Petitioner merely offers general assertions of how the COVID-19 pandemic impacted his state court proceedings. (Reply, ECF No. 19, PageID # 894.) Without providing *specific* details as to how the COVID-19 pandemic caused him to file his state post-conviction petition more than a year past the statutory deadline, Petitioner has failed to provide sufficient cause to excuse the default. *Gilmore*, 2023 WL 5048081, at *6–7; *Little*, 2023 WL 2666116, at *6–7. Petitioner also points out that he is a "57-year old man that has only a seventh-grade education," and that he had to rely on court-appointed counsel and inmate assistance in pursuing his potential remedies. (Reply, ECF No. 19, PageID ## 893–94.) A "petitioner's pro se status and lack of legal knowledge are generally insufficient to justify equitable tolling." *Ruff v. Mazza*, 2023 U.S. App. LEXIS 26884, at *4 (6th Cir. Oct. 10, 2023) (citing *Jones v. United States*, 689 F.3d 621, 627 (6th Cir. 2012); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012)). Petitioner's general assertions are unpersuasive, and he has failed to offer sufficient cause to excuse the procedural default.

Petitioner further posits that he is actually innocent as a gateway to surpass the procedural bar. (Reply, ECF No. 19, PageID # 897 (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Dretke v. Haley*, 541 U.S. 386, 393 (2004)).) Petitioner asserts that the incident was recorded by video surveillance cameras outside of the "Sandpebble lounge and surrounding businesses [which] would have accurately depicted the familiarity between him and A.S." (*Id.* at PageID ## 898–900.) Petitioner also maintains that he and A.S. engaged in consensual sex, after smoking crack cocaine together. (*Id.* at PageID # 899.)

The Supreme Court has held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995).  The Court found that a "credible showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise procedurally-barred habeas petition.  *Souter v. Jones*, 395 F.3d 577, 588–89 (6th Cir. 2005) (citing *Schlup*, 513 U.S. at 317).  "Actual innocence" is not a constitutional claim, "but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  *Id.* (quoting *Schlup*, 513 U.S. at 315; *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

To satisfy the actual innocence exception, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 327); *Fetherolf v. Warden, Chillicothe Corr. Inst.*, No. 2:19-cv-00168, 2020 WL 605928, at *28–29 (S.D. Ohio Feb. 7, 2020) (Deavers, J.).  The Sixth Circuit has explained:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316.  Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial."  *Id.* at 317. . . . The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623, 140 L.Ed.2d 828, 118 S.Ct. 1604 (1998).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."  *Schlup*, 513 U.S. at 324.  The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'"  *Id.* at 321.

*Souter*, 395 F.3d at 589–90 (footnote omitted).

Petitioner attempts to support his actual innocence claim with "new evidence" of video surveillance cameras located outside the Sandpebble Lounge.  (Reply, ECF No. 19, PageID ## 899–90 (noting that Petitioner discovered this information from a fellow inmate, whose case included video evidence from the same location).)  Petitioner fails to show, however, that the alleged recorded video footage of the incident in this case even exists, which the state appellate court discussed in Petitioner's post-conviction appeal.  (ECF No. 10, PageID ## 251–52 ("Black has not provided any evidence beyond his bare assertions to affirmatively demonstrate that there were any surveillance cameras in the area or *that any video evidence relevant to the charges against him existed*."  *Id.* at PageID # 251 (emphasis added)).)  Although Petitioner points to another case connected to the Sandpebble Lounge that *did* have video footage introduced at trial, Petitioner has not introduced credible evidence that recorded footage exists for the day and time related to the incident in *his* case.  Notably, Petitioner "directed defense counsel to investigate the surveillance cameras at the bar and surrounding businesses" (Reply, ECF No. 19, PageID # 907), leading to a conclusion that Petitioner was aware of the cameras before trial, regardless of later learning about another case that introduced video evidence from the Sandpebble.  Without more than self-serving statements regarding the encounter with A.S., Petitioner has not provided new, reliable evidence of his actual innocence.  Accordingly, Petitioner has failed to meet the threshold inquiry to surpass the procedural bar.  *Schlup*, 513 U.S. at 317, 324; *Souter*, 395 F.3d at 589–90.

This claim should be **DISMISSED** due to procedural default.

### F.     Claim 6: Ineffective Assistance of Trial Counsel

In his sixth ground for relief, Petitioner asserts that his trial counsel failed to investigate a defense and provided deficient performance.  (Petition, ECF No. 1, PageID # 13.)  Petitioner

alleges that he told his trial counsel that he (Petitioner) had a "prior friendly relationship" with the alleged victim, and that Petitioner told his trial counsel about the surveillance cameras. (*Id.*)

Respondent contends that this claim is procedurally defaulted because it should have been raised on direct appeal. (Return, ECF No. 11, PageID # 719.) Respondent notes that the default cannot be excused by alleging ineffective assistance of appellate counsel because Petitioner never filed a Rule 26(B) application to preserve that claim. (*Id.* at PageID # 720.) Further, Respondent points out that Petitioner filed an untimely state post-conviction petition. (*Id.*)

Petitioner maintains he is actually innocent, which he contends allows this Court to reach the merits of the claim. (Reply, ECF No. 19, PageID # 897.) Petitioner asserts he informed his trial counsel about the surveillance cameras that would show his innocence, but that his trial counsel never obtained any video footage. (*Id.* at PageID # 907.)

As an initial matter, Respondent posits that this ineffective assistance of counsel claim should have been raised on direct appeal. (Return, ECF No. 11, PageID # 719.) In analyzing this issue in Petitioner's post-conviction proceedings, the state appellate court noted the following:

> {¶ 24} The state argues Black's ineffective assistance of counsel claim is barred by res judicata because he was represented by different counsel in his direct appeal and could have raised it as part of that appeal. However, Black's claim turns in part on what he allegedly told his trial counsel, which would not be contained in the record on direct appeal. "When allegations of ineffective assistance of counsel hinge on facts not appearing in the record, the proper remedy is a petition for post-conviction relief rather than a direct appeal." *State v. Davis*, 10th Dist. No. 05AP-193, 2006-Ohio-5039, ¶ 19. *See also State v. Coleman*, 85 Ohio St.3d 129, 134 (1999) ("Any allegations of ineffectiveness based on facts not appearing in the record should be reviewed through the postconviction remedies of R.C. 2953.21."). Therefore, Black's ineffective assistance claim was properly brought as part of his postconviction relief petition.

(ECF No. 10, PageID ## 252–53.)  This claim was properly raised in post-conviction and is not barred by *res judicata*.  Although Petitioner appropriately raised this claim in post-conviction, Petitioner failed to timely file his post-conviction petition.  (ECF No. 10, PageID ## 249–50.)

Aligning with claim five, this claim is procedurally defaulted.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021).  Petitioner filed an untimely post-conviction petition, meaning the state trial court lacked jurisdiction to consider the merits of the petition.  (ECF No. 10, PageID # 250).  As detailed in claim five above, the state appellate court actually enforced the statute of limitations, despite Petitioner's contention otherwise.  (*Id.*)  Additionally, the statute of limitations is an adequate and independent state ground to preclude habeas relief.  *Stojetz v. Ishee*, 892 F.3d 175, 205–06 (6th Cir. 2018).  The first three parts of the *Maupin* test are satisfied.  *Maupin*, 785 F.2d at 138; *McNeill*, 10 F.4th at 595.  Further, Petitioner has failed to introduce new, reliable evidence that video footage of the incident actually exists, meaning he does not meet the actual innocence gateway to surpass the procedural bar.  *Schlup*, 513 U.S. at 317, 324; *Souter*, 395 F.3d at 589–90.  Accordingly, Petitioner's sixth ground for relief is procedurally defaulted.

This claim should be **DISMISSED** due to procedural default.

## IV.    Recommended Disposition and Certificate of Appealability Determination

For the foregoing reasons, the Undersigned **RECOMMENDS** that the Petition be **DENIED**, and this action be **DISMISSED**.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, a District Court must consider whether to issue a Certificate of Appealability ("COA").  A state prisoner who seeks a writ of habeas corpus in federal court does not have an automatic right to appeal a district court's adverse decision unless the court issues a COA.  28

U.S.C. § 2253(c)(1)(A).  When a claim has been denied on the merits, a COA may be issued only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)).  When a claim has been denied on procedural grounds, "a COA should issue when the [petitioner] shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

Because no reasonable jurist would disagree with this conclusion, the Undersigned **RECOMMENDS** that Petitioner should not be granted a certificate of appealability.  *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("While this standard is not overly rigid, it still demands 'something more than the absence of frivolity.'").

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within **FOURTEEN (14)** days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made

herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the District Judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Judge adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED**.

**DATED:  <u>December 20, 2023</u>**          <u>s/ *Elizabeth A. Preston Deavers*</u>
**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**